UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| IN RE:, ) | |
| IN THE MATTER OF THE COMPLAINT ) | |
| OF THE AMERICAN MILLING CO., ) | |
| UNLIMITED, H&B MARINE, INC., and ) | |
| AMERICAN MILLING, L.P., a limited ) | Case No.4:98CV575SNL |
| liability partnership, for exoneration from ) | |
| or limitation of liability, ) | |
| ) | |
| Petitioners. ) | |

## MEMORANDUM

This admiralty case arises from the allision that occurred on April 4, 1998, in the St. Louis Harbor, when several barges broke loose from the M/V ANNE HOLY's tow and allided with a pier of the Eads Bridge and a moored gambling riverboat casino, The Admiral. In addition to the property damage claims involving the President Casino (on behalf of The Admiral) and one or more of the subject barges, numerous individuals filed personal injury claims against President Casino and/or Winterville Marine Services, the employer of the M/V ANNE HOLLY's crew at the time of the allision. Many of these persons (hereinafter referred to as Individual Claimants) have settled their claims. This matter is before the Court on President Casino's motion for summary judgment as to the claims of Individual Claimants Latoya Fentress, Torrell Borders, and Markeesha Rodgers (#1858), filed April 15, 2008. All responsive pleadings have now been filed and the matter is ripe for disposition.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing

factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976).

Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see*, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d.

915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

The material facts regarding these particular claimants are essentially not in dispute. On the evening of April 4, 1998 several barges in the tow of the M/V ANNE HOLLY, in the St. Louis Harbor, broke free and allided with the Eads Bridge and The Admiral. At the time of the allision with The Admiral, there were not only many patrons aboard it, but also numerous employees of the President Casino, the owner and operator of The Admiral.

It is a matter of record in this long-standing litigation that

> "[T]he ADMIRAL is a licensed floating gambling casino moored to the Missouri bank of the UMR[1] immediately below the Eads Bridge, within the City of St. Louis. It had been located at Mile 179.9 since 1983 pursuant to a permit issued by the Army Corps of Engineers under the River and Harbors Authorization Act of 1899, 33 U.S.C. 403. As a permanently moored gambling casino, it sits in a navigable channel of the Mississippi River, yet no longer retains certain attributes of similar vessels: engines to power motion and steering, life jackets, and marine radio equipment to communicate with the Coast Guard."

In re American Milling Co., 270 F.Supp. 1068, 1079 (E.D.Mo. 2003), *aff'd in part, rev'd in part (on other grounds),* 409 F.3d. 1005 (8th Cir. 2005).

---

[1]Upper Mississippi River

On or before April 4, 1998, claimants Fentress, Borders, and Rodgers were all employed by President Casino as a slot shift supervisor, card dealer, and a slot floor person, respectively. At the time of the allision, all three (3) claimants were on The Admiral's premises, its walkways or ramps, incidental to their employment with President Casino.

All three (3) claimants have filed identical cross-claims against President Casino for alleged personal injuries sustained as a result of the allision. Each pled that they were employees of the President Casino on the date of the allision, and that their alleged injuries were the result of the common-law negligence of the President Casino. There is no jurisdictional statement grounding their claims under the Jones Act, 46 U.S.C.App. §688.

The President Casino argues that the claimants are not entitled to pursue their claims under the Jones Act for primarily three (3) reasons: 1) they failed to state a cause of action under the Jones Act in their cross-claims; 2) The Admiral is not a "vessel in navigation" as required by the Jones Act for liability to attach; and 3) as employees of the President Casino, any claim for negligence regarding their alleged personal injuries is within the exclusive jurisdiction of the Industrial and Labor Relations Commission pursuant to Missouri's Workers' Compensation Law, §287.120.1-2 R.S.Mo. (2000). The claimants take issue with the fact that they did not state a jurisdictional ground for the claim to be the Jones Act; instead, arguing that as long as they pleaded being employees aboard a "vessel", the President Casino (and presumably, the Court) were to infer that they were also stating a claim under the Jones Act. They further argue that since The Admiral has been repeatedly referred to as a "vessel", this is enough to bring it within the purview of the Jones Act. Finally, they assert that they do not fall under the purview of Missouri's Workers' Compensation Law because they were not actually working; i.e. finished their work shifts and were on the "employee ramp", when the allision occurred.

4

After careful consideration of the matter, the Court finds that the claimants have failed to properly plead a Jones Act cause of action; however, even if they had done so, they cannot set forth the necessary elements of same because The Admiral is not a "vessel in navigation" as required by the Jones Act. Finally, since the claimants have not fallen within this Court's jurisdiction under the Jones Act, they arguably have a workers' compensation claim which falls exclusively within the jurisdiction of Missouri's Industrial and Labor Relations Commission to review.

Claimants contend that as long as they "alleged they were employees of the ADMIRAL and were still on board at the time of the incident", this wording "is sufficient to put Defendant on notice a Jones Act claim may be possible.". Claimants Memorandum of Law in support of their Response (#1875), pg. 7. The Court disagrees. Notice pleading in the federal courts does not require the extensive fact pleading required by state courts; however, it does require enough information to provide a defendant with a clear understanding as to the jurisdictional grounds supporting federal jurisdiction. In this instance, the claimants pleading of employment and being on The Admiral at the time of the incident does not provide notice of a Jones Act claim but rather provides notice of a workers' compensation claim; i.e. they were employees injured on the employer's premise. Nowhere is there any indication that they are stating a cause of action under the Jones Act. As far as their cross-claim reads, they are stating a common-law negligence action which raises an issue regarding the exclusive jurisdiction of the Commission under Missouri's Workers' Compensation Law. Thus, the Court finds that the claimants have failed to meet the notice pleading requirements of Rules 8 & 10 Fed.R.Civ.Proc. in apprising President Casino of their intention to pursue Jones Act claims.

Even if the claimants had properly pled a Jones Act cause of action, they still would have failed in pursuing such a claim because one of the predicate determinations for a viable Jones Act claim is whether the "vessel" to which the claimant is connected is a "vessel in navigation". Claimants argue that simply because all parties, including this Court and the Eighth Circuit Court of Appeals, have referred to The Admiral as a "vessel", this is sufficient to bring it within the purview of the Jones Act. They are mistaken as to this legal conclusion.

The Jones Act provides that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law . . ." 46 U.S.C. App. §688(a). The Jones Act provides tort remedies for sea-based maritime workers. Stewart v. Dutra Construction Co., 543 U.S. 481, 488 (2005). The Jones Act does not define the term "seaman"; however, it did establish a two-part test for determining "seaman status": 1) the "employee's duties must contribute [e] to the function of the vessel or to the accomplishment of its mission"; and 2) the employee "must have a connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature." Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995); Bunch v. Canton Marine Towing Co., 419 F.3d. 868, 871 (8th Cir. 2005)(*citing* Chandris, *supra.*); *see also*, McDermott Int'l v. Wilander, 498 U.S. 337, 355 (1991). The dispute in this case is whether the claimants had a substantial connection to a "vessel in navigation".

The definition of "vessel in navigation" under the Jones Act is not as expansive as the general definition of "vessel". U.S.A. v. Templeton, 378 F.3d. 845, 852 (8th Cir. 2004). In Stewart, *supra.*, the Supreme Court reaffirmed that at the time the Jones Act (as well as the Longshore and Harbor Workers' Compensation Act) was enacted "1 U.S.C. §3 defined the term `vessel' for purposes of those statutes." Stewart, 543 U.S. at 488- 492; Bunch, at 871. Upon review of the Jones Act and 1 U.S.C. §3, the Court reasoned that a "vessel in navigation" for

6

purposes of the Jones Act "requires only that a watercraft be `used, or capable of being used, as a means of transportation on water' to qualify as a vessel. It does not require that watercraft be used *primarily* for that purpose." Stewart, 543 U.S. at 495; Bunch, at 871. "The `in navigation' requirement is relevant only `to whether the craft is `used or capable of being used' for maritime transportation.'" Bunch, at 871 *quoting* Stewart, 543 U.S. at 496. However, a watercraft is not "capable of being used" for maritime transport "in any meaningful sense if it has been permanently moored or otherwise rendered practically incapable of transportation or movement." Stewart, 543 U.S. at 495. The Supreme Court explained this viewpoint:

> "This distinction is sensible: A ship and its crew do not move in and out of Jones Act coverage depending on whether the ship is at anchor, docked for loading or unloading, or berthed for minor repairs, in the same way that ships taken permanently out of the water as a practical matter do not remain vessels merely because of the remote possibility that they may one day sail again."

Stewart, 543 U.S. at 495. As an example of this distinction the Court specifically cited to Pavone v. Mississippi Riverboat Amusement Corp., 52 F.3d. 560, 570 (5th Cir. 1995). Interestingly, and extremely relevant to the instant case, is the Supreme Court's explicit notation in referencing the Pavone case as an example of a ship no longer considered a "vessel in navigation" for Jones Act purposes: "floating casino was no longer a vessel where it `was moored to the shore in a semipermanent or indefinite manner'". Id,, 543 U.S. at 495. This reference is significant because as the Supreme Court noted "[t]he question remains in all cases whether the watercraft's use `as a means of transportation on water' is a practical possibility or merely a theoretical one." Stewart, 543 U.S. at 497.

Two (2) recent post-Stewart cases continue this distinction in finding that riverboat casinos indefinitely moored to the shore or a dock were not "vessel(s) in navigation" for purposes

7

of the Jones Act. In <u>De La Rosa v. St. Charles Gaming Co., Inc.</u>, 474 F.3d. 185 (5th Cir. 2006), the Court reviewed both <u>Pavone</u>, *supra.* and <u>Stewart</u>, *supra.* The Fifth Circuit Court of Appeals acknowledged that "*Stewart* expanded the definition of vessel to include more unconventional watercrafts than we had previously thought" but concluded that <u>Stewart</u> had not overturned <u>Pavone</u>. <u>De La Rosa</u>, at 187. It found that the evidentiary record revealed the CROWN CASINO (the riverboat casino at issue) to be indefinitely moored to land by lines tied to steel pilings; that it received water, telephone lines, sewer lines, cable television and data processing lines from land-based sources, and had not been used as a "seagoing vessel" in approximately two (2) years. <u>Id</u>., at 187 More importantly, the Court found that the defendants had no present intention to use the CROWN CASINO as a "seagoing vessel"; "[r]ather their intent is to use it solely as an indefinitely moored floating casino. Its operations are entirely gaming-related, and not maritime in nature." <u>Id.</u>, at 187. The Court concluded the "[e]ven after *Stewart*, an indefinitely moored floating casino like the CROWN CASINO is not a `vessel' for purposes of admiralty jurisdiction." <u>Id.</u>, at 188.

In <u>Ford v. Argosy Casino Lawrenceburg</u>, 2008 WL 817113 (S.D. Ind. 2008)[2], the District Court, after a thorough review and analysis of <u>Stewart</u>, *supra.*, held that a riverboat casino indefinitely moored to the shore was not a "vessel in navigation" for purposes of the Jones Act. The District Court reached this decision despite the fact that the riverboat in question had a full marine crew; was regularly inspected by the Coast Guard and certified "seaworthy"; was capable of commencing navigation within minutes, and was capable of augmenting her shore-based utilities with on-craft power generation. <u>Ford v. Argosy Casino Lawrenceburg</u>, at *3. Despite

---

[2]Although the Court prefers not to cite to unpublished opinions, it does so in those instances wherein the opinion offers relevant guidance to the issue at hand.

these attributes, and the fact that following construction of a new casino the ARGOSY VI (the riverboat casino at issue) "may navigate under her own power to a new location", the District Court still opined that Stewart mandated that at the time of the accident the ARGOSY VI was not a "vessel in navigation" for purposes of the Jones Act. Ford v. Argosy Casino Lawrenceburg, at *3-*4. It held that "[t]he prospect that the *Argosy VI* will be moved at some time still in the future, when the new riverboat casino is completed, is not enough to show that the casino was a vessel in navigation in 2004." Ford v. Argosy Casino Lawrenceburg, at *4.

This Court recognizes the fact that in Bunch, *supra.* the Eighth Circuit Court of Appeal rejected the so-called "primary purpose" test relied on by other courts, including to some degree Ford v. Argosy Casino Lawrenceburg. However, as did all these courts, the primary factor to consider is whether the watercraft was "used, or capable of being used, as a means of transportation on water." The Court concludes that The Admiral was not practically capable of being used as a means of transportation on the night of April 4, 1998. It was indefinitely moored to the shore, was stripped on engines to power motion and steering, possessed no life jackets or marine equipment to communicate with the Coast Guard. As in De La Rosa, *supra.*, its entire physical construction had been modified to carry out it sole purpose as an indefinitely moored floating casino; i.e. its operations were completely gaming-related and not maritime in nature. As of April 4, 1998, The Admiral was not a "vessel in navigation" for purposes of the Jones Act.

Plaintiffs further argue that they are entitled to bring a common-law negligence action, if not a Jones Act action, because their purported injuries do not fall within the purview of Missouri's Workers' Compensation Act, §287.120.1 R.S.Mo. Plaintiffs contend that because they were injured after their work shifts had ended, their purported injuries did not arise out of and in the course of their employment. After careful consideration of this matter, the Court finds

that the plaintiffs' purported injuries do arguably fall within the purview of Missouri's Workers' Compensation Act.

Missouri's Workers' Compensation Act provides employers with immunity from common-law negligence/tort actions arising out of an employee's accidental injury or death while in the course of employment. Pauley, et. al. v. Ball Metal Beverage Container Corp., 460 F.3d. 1069, 1072 (8th Cir. 2006); Wells v. T.J. Brown, D.D.S., 33 S.W.3d. 190, 192 (Mo. 2000); Risher v. Golden, 182 S.W.3d. 583, 586 (Mo.App. 2005). The Act provides the exclusive rights and remedies for such claims, and in these cases, the Missouri Labor and Industrial Commission has the exclusive subject matter jurisdiction. Pauley, at 1072; State ex.rel. Taylor v. Wallace, 73 S.W.3d. 620, 621 (Mo. 2002). Dispositive motions challenging subject jurisdiction should be granted when it "appears" that the court lacks subject matter jurisdiction; and the "quantum of proof required is not high and can be met with a preponderance of evidence that the court lacks jurisdiction." *See*, Risher, at 586 (citations omitted); *see also*, Harris v. Westin Management Co. East, et. al., 230 S.W.3d. 1, 3-4 (Mo. 2007); Zahn v. Associated Dry Goods Corp. et. al., 655 S.W.3d. 769, 772 (Mo.App. 1983). In light of the exclusivity of rights and remedies under Missouri's Workers' Compensation Act, a court "must resolve all doubts regarding jurisdiction in favor of the Commission rather than the [circuit] court." Risher, at 587 *citing* Nowlin ex.rel. Carter v. Nichols, 163 S.W.3d. 575, 578 (Mo.App. 2005).

In order to be covered by workers' compensation, an injury must "arise out of and in the course of employment". Wells v. Brown, at 192; §287.120.1 R.S.Mo. "Arising out of" and "in the course of" are not synonymous and their respective tests are separate and distinct. Wells v. Brown, at 192; Roberts v. Parker-Banks Chevrolet, 58 S.W.3d. 66, 69 (Mo.App. 2001); Zahn, at 772. Plaintiffs contend that because their purported injuries occurred after their work shifts had

formally ended, their injuries are not "work-related" and fall outside workers' compensation coverage.[3] These considerations do not remove the plaintiffs' purported injuries from the exclusive jurisdiction of workers' compensation.

The Missouri courts have considered a variety of injuries and the events surrounding them in determining whether or not they come under workers' compensation.

> "Historically, it has been recognized that an employee does not have to be directly engaged in the task with which he is primarily charged as a condition precedent to recovering workers' compensation. Nor is it necessary that the activity leading to the injury be a part of an employee's specific job description. The rule in Missouri is that an injury is said to have occurred `in the course of employment' if it `occurs within the period of employment, at a place where the employee may reasonably be' and `while [he is either] reasonably fulfilling the duties of his employment or *is engaged in doing something incidental thereto.*'"

DeVille v. Hiland Dairy Co., 157 S.W.3d. 284, 287 (Mo.App. 2005)(internal citations omitted).

---

[3]The plaintiffs cite Kasl v. Bristol-Care, Inc., 984 S.W.2d. 852 (Mo.1999) in support of this contention. Defendant disputes the applicability of this case, especially in light of Lawson v. Ford Motor Co., 217 S.W.3d. 345 (Mo.App. 2007) which discusses the 2005 amendments to Missouri's Workers' Compensation Act, esp. as the terms "accident" and "injury" were defined in relation to causation. Apparently, the holding in Kasl was held in disfavor and the Missouri legislature changed the definition of a compensable injury to use the language "prevailing factor" in relation to causation as opposed to the pre-2005 definition(s) which concluded that an injury was compensable if it was "work-related" which used the term "substantial factor" in relation to causation. Lawson, at 348-49. Defendant believes that Lawson abrogated the holding in Kasl; however, Lawson makes it quite clear that the Missouri Legislature's 2005 amendments were not retroactive. "The language in section 287.020.10 merely serves as clarification of the fact that any construction of the previous definitions by the courts was rejected by the amended definitions contained in section 287.020. There is no express language stating that it was the intent of the legislature to apply either section 287.020 or section 287.067 retroactively, nor did the legislature state that its rejection of the common law interpretations of the previous definitions applied retroactively. Instead, it appears from the plain language of the statute, the legislature merely intended to clarify its intent to amend the definitions and apply those definitions prospectively." Lawson, at 349. Whether Kasl is or was good law is immaterial because plaintiffs' injuries appear to be within the purview of Missouri's Workers' Compensation Act.

Firstly, the Missouri courts have found a wide variety of activities to qualify as "incidental to and not independent of the relation of employer and employee" including but not limited to those in: Kasl, *supra.* (health care worker's foot fell asleep while sitting and broke when got up to begin medication rounds); Drewes v. Trans World Airlines 984 S.W.2d. 512, 514 (employee injured while eating lunch); Cox v. Tyson Foods, Inc., 920 S.W.2d. 534, 537 (employee injured while walking across employer's parking lot during paid break); DeVille, *supra.* (employee turned and tore knee muscle while stopping to talk to other employees during lunch break); Gaston v. Steadley Co., 69 S.W.3d. 158 (employee struck by pickup truck while crossing parking lot)[4]. Even Kasl does not abrogate the Missouri courts' long history of finding that "[W]hen an employee suffers an accident while leaving work, still on the employer's premises, those injuries received are considered incidental to employment and are compensable." Zahn, at 772 (citations omitted). Furthermore, Kasl only found that workers' compensation does not cover an event *entirely idiopathic* in nature. *See*, DeVille, at 288 *citing* Kasl, at 854. In order to be compensable, the Kasl Court found that the injury cannot come from a hazard or risk "unrelated to" employment; i.e. such as idiopathic conditions which are peculiar or personal to the individual. DeVille, at 288 *citing* Kasl, at 854. In the instant case, the plaintiffs' injuries are presumably not connected to any pre-existing or idiopathic conditions.

Secondly, the fact that the plaintiffs all admit that they were on the employees' ramp; i.e. still on the defendant's premises, at the time of the allision, undermines their assertion that their

---

[4]Gaston, *supra.* was listed by the Missouri Supreme Court in Hampton v. Big Boy Steel Erection, 121 S.W.3d. 220, 223 (Mo.2003) as being overruled only to the extent that the reviewing court viewed the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commission's award; however, the ultimate decision in Gaston was that the Commission's award "is supported by competent and substantial evidence on the whole record."; therefore, any error in the reviewing standard applied was ultimately corrected by a review of the entire evidentiary record.

purported injuries are not compensable under workers' compensation. Employees are not in the course of their employment except while engaged "in or about" the premises where their duties are being performed, or where their services require their presence. Wells v. Brown, at 192; Drewes v. Trans World Airlines, at 514. "If an employee is injured on extended premises while coming to or from work, the injury is in the course of employment as if `it had happened while the employee was engaged in his work at the place of its performance.'" Wells v. Brown, at 192 (citations omitted).

Under the "extended premises" doctrine, an employee's injury which occurs while going to or coming from work is compensable if:

> "(a) the injury-producing accident occurs on premises which are owned or controlled by the employer, or on premises which are not actually owned or controlled by the employer but which have been so appropriated by the employer or so situate, designed and used by the employer and his employees incidental to their work as to make them, for all practicable intents and purposes, a part and parcel of the employer's premises and operation; and (b) if that portion of such premises is a part of the customary, expressly or impliedly approved, permitted, usual and acceptable route or means employed by workmen to get to and depart from their places of labor and is being used for such purpose at the time of the injury."

Gaston, at 161 *citing* Cox v. Tyson Foods, Inc., 920 S.W.2d. 534, 535-36 (Mo. 1996); *see,* Roberts v. Parker-Banks Chevrolet, at 70 *citing* Wells v. Brown, at 192. "Property is sufficiently `appropriated' to be considered an extension of an employer's premises where it is used by employees as a route of access to the employer's premises with the employer's knowledge and acquiescence." Roberts v. Parker-Banks Chevrolet, at 70 *citing* Cox, at 536. In light of these

considerations, there is absolutely no dispute that the plaintiffs' were on the defendant's premises at the time of the allision resulting in their purported injuries.[5]

Having reviewed the record before this Court as a whole, this Court finds that by a preponderance of the evidence, it appears that this Court lacks subject matter jurisdiction over the plaintiffs' personal injury claims. *See*, Risher v. Golden, at 586; State ex.rel. J.E. Jones Construction v. Sanders, 875 S.W.2d. 154, 156-57 (Mo.App. 1994).

The plaintiffs' last argument for keeping their claims before this Court is that the "dual capacity doctrine" should apply. Under the "dual capacity doctrine" employees must allege that the injury resulted from a breach of duty owed by the employer to the employee separate and distinct from the duty arising out of the employer-employee relationship. Gatlin v. Truman Medical Center, 770 S.W.2d. 510, 511 (Mo.App. 1989). In order for the doctrine to apply, "the employer must step outside the boundaries of the employer employee relationship, creating separate and distinct duties to the employee; the fact of injury must be incidental to the employment relationship." Felling v. Wire Rope Corp., 854 S.W.2d. 458, 463 (Mo.App. 1993) *quoting* Coello v. Tug Mfg. Corp., 756 F.Supp. 1258, 1266 (W.D.Mo. 1991)(applying Missouri law).

To date, the "dual capacity doctrine" has not been formally adopted by Missouri courts, and the plaintiffs have not disputed this fact. Coello, *supra.*; Felling, *supra.* There is nothing before this Court which indicates in the least that the Missouri courts will adopt the doctrine in the near future; therefore, this Court will not do so now.

---

[5]Without citing any caselaw, plaintiffs contend that because the ramp is used by others, that this somehow takes it outside the realm of workers' compensation. The Court disagrees.

Finally, the plaintiffs seem to indicate that whether or not this Court grants summary judgment to defendant President Casino is really immaterial because the larger percentage of liability lies with Winterville which has not filed any dispositive motion regarding these plaintiffs' claims. While this fact is true, the reality is that Winterville filed for bankruptcy protection in the United States Bankruptcy Court, Northern District of Mississippi in early summer of 2005. This Court, in observance of the automatic stay provisions under federal bankruptcy law, entered an order staying all proceedings in this cause of action as to Winterville Marine Services. *See*, Court Order #1602, filed September 2, 2005. As of today's date, that order is still in effect. Thus, any claims by these plaintiffs in connection with Winterville Marine Services will not be entertained by this Court, and for all practical purposes, are non-existent.

In light of the Court's above-referenced findings, and as a matter of law, the Court finds that plaintiffs' have not set forth Jones Act claims, and that their purported personal injuries appear to fall within the purview of the exclusive rights and remedies of Missouri's Workers' Compensation Act, §287.120.1 R.S.Mo. and within the exclusive subject matter jurisdiction of the Missouri Industrial and Labor Relations Commission. Summary judgment shall be granted to the defendant President Casino on these plaintiffs' purported personal injury claims.

Dated this __10th__ day of July, 2008.

                                                                                     _____
                                                                                     SENIOR UNITED STATES DISTRICT JUDGE