UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

IN RE: )
IN THE MATTER OF THE COMPLAINT )
OF THE AMERICAN MILLING CO., )
UNLIMITED, H&B MARINE, INC., and )
AMERICAN MILLING, L.P., a limited )
                                                        Case No. 98CV575SNL
partnership, for exoneration from or )
limitation of liability, )
                                                        )
       Petitioners. )

## MEMORANDUM OPINION

On or about April 4, 1998 the M/V ANNE HOLLY collided with the Eads Bridge in the St. Louis Harbor of the Upper Mississippi River, whereupon, several barges in tow broke loose. One or more of these barges hit The Admiral, a casino gambling boat permanently moored and owned by President Casino. This matter is before the Court regarding certain property/business damages claims brought by President Casino and Barge Owners Brennan Marine Co., Pinnacle Barge Co., L.L.P., and Pinnacle Transportation, Inc.[1] On June 12, 2008 this Court heard

---

[1] On or about March 14, 2008 the interested parties filed with the Court a "Stipulation of the Parties Regarding Certain Property Damages" (#1852). As a result of this stipulation, the following issues were the only ones still in dispute: 1) President Casino and Essex' claim for business interruption and extra expenses (additional advertising, including "cash coupons", continued payment of hourly employees, payment of "tips" to certain employees); 2) start date and/or rate of pre-judgment interest; and 3) whether such interest is simple interest or compounded annually. On or about June 12, 2008, the interested parties filed with the Court a "Stipulation of the Parties Regarding Start Date for Prejudgment Interest" (#1879). The parties had reached a second agreement as to the start date for the calculation of prejudgment interest: accrual to begin as of June 1, 1998. Thus, the remaining issues argued at the hearing and presently before this Court are 1) the business interruption and additional business expenses; 2) rate of pre-judgment interest; and 3) whether such interest is to be simple interest or compounded annually.

argument and testimony regarding said claims. At the conclusion of this hearing, all parties were permitted to file post-hearing briefs, and this matter is now ripe for disposition.

After careful consideration of all objections to exhibits and testimony taken with the case, all said objections are hereby overruled, and all exhibits offered into evidence at the hearing are received into evidence. All testimony will be considered by the Court and given its due weight. This Court, having now considered the pleadings, the testimony of witnesses, documents in evidence, and any other evidentiary materials submitted for the Courts' consideration, and being fully advised in the premises, hereby reaches the following determinations.

## Business Interruption-Net Business Income Loss

There appears to be no dispute as to President Casino's entitlement to recover for lost profits; i.e. "lost business income" or "business interruption damages". The dispute here is over the methodology to ascertain the amount of gaming revenue President would have earned if not for the closure of its gaming facility due to the allision of April 4, 1998.

The Court has carefully reviewed all of the submitted documentation, as well as the two (2) highly-qualified experts' testimonies, and determines that President Casino's budgeted gaming revenue analysis is the most reasonable method by which to account for its losses. Thus, the Court accepts President Casino's total lost revenue resulting from the closure of The Admiral to be $4,512,968; comprising of lost gaming revenue of $4,200,224.00 and other lost revenue (non-continuing expenses) of $312,744.00.

## Extra Expenses

President Casino also requests damages in the nature of extra expenses for "reopening costs" comprised of extra advertising costs of $76,348.00 and extra cash coupon redemption

costs of $214,362.00.  After careful consideration of the matter, the Court has decided to deny the recoupment of these "extra expenses" as being the result of the closure of The Admiral.

### Payment of Wages and/or Tips to Employees

The President Casino also requests recoupment of wages it continued to pay hourly employees, and "tips" it paid to those employees in certain service positions who depended on patrons' tips as part of their monies earned.

It is clear to the Court that President Casino's choice to make these payments was a voluntary business decision.  There was no law or regulation requiring these payments, and no collective bargaining agreement in place requiring these payments to any union employees.  The evidence before the Court shows that President Casino wanted to forego any unemployment payouts, was concerned about employees seeking employment elsewhere during the shutdown period, concerned with getting The Admiral up and running as quickly as possible without any delay due to training new personnel, and basically wanting to maintain a "good guy" image as an employer.  These are all justifiable reasons; however, there was no evidence before the Court demonstrating a wholesale exodus of employees from The Admiral during this time-period, no evidence that hourly employees were mandated to continue working during this period, and the fact is that "tips" are not an employer's responsibility but rather a patron's choice to make in giving.  Thus, the Court will deny any recoupment of wages paid to hourly employees and/or tips paid during this time-period.

### Rate of Prejudgment Interest

Although at the hearing, President Casino offered evidence by which it computed prejudgment interest using two (2) different rates: 1) a 10-yr average rate of return on equity for Markel Corp., Essex Insurance's parent, which it applied to payments made by Essex, St. Paul

3

Ins. Co., and 2) the average prime rate plus one half point representing President Casino's average cost to borrow money; it appears from the post-trial briefs that both President Casino and American Milling have agreed upon prejudgment interest at a rate of 6.4%.[2]  The Court concurs and will adopt a rate of prejudgment interest at 6.4%.

### Compounded Annually or Simple Interest

Having decided that the prejudgment interest rate shall be 6.4%, and the parties having decided that said prejudgment interest shall begin as of June 1, 1998, the remaining question is whether the interest shall be compounded annually or be simple interest.

Having considered the matter, and upon review of relevant caselaw, it appears that prejudgment interest in admiralty cases is not only customarily awarded absent exceptional circumstances, but that such an award of prejudgment interest is compounded annually.  *See*, American River Transportation Co., Inc. v. Paragon Marine Services, Inc., 213 F.Supp.2d. 1035, 1066 (E.D.Mo. 2002), *aff'd* 329 F.3d. 946 (8th Cir. 2003); Federal Barge Lines, Inc. v. Granite City Steel, 664 F.Supp. 453, 454 (E.D.Mo. 1987); *see also*, Federal Barge Lines, Inc. v. Republic Marine, Inc., 616 F.2d. 372 (8th Cir. 1980)(Court affirms district court's award of prejudgment interest at 10% per annum); Federal Barge Lines, Inc. v. Granite City Steel, et. al., 608 F.Supp. 142 (E.D.Mo. 1985)(district court awards prejudgment interest at 12% per annum).  Thus, the Court awards President Casino prejudgment interest at the rate of 6.4% per annum, beginning on June 1, 1998.

---

[2]President Casino's post-hearing brief (#1882), pg. 14: "Therefore, to fully compensate President and its insurers, this Court should assess prejudgment interest at a rate of 6.4% per annum."  American Milling's post-hearing brief (#1881), pg. 14: "The average prime rate since April 1998 is about 6.4%.  It is at least one approximation of a market rate of interest and a rate the Eighth Circuit has approved."

In conclusion, President Casino shall be awarded business interruption damages, not to include payments of wages to hourly employees, payments of tips to certain service employees, additional advertising expenses, and additional cash coupon redemption expenses. Furthermore, such award shall include prejudgment interest, beginning June 1, 1998, at 6.4% compounded annually. Finally, such award shall be reduced by twenty percent (20%), President Casino's adjudged comparative fault in this matter.

Dated this __24th__ day of July, 2008.

_____
SENIOR UNITED STATES DISTRICT JUDGE