**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| IN RE: )<br>IN THE MATTER OF THE COMPLAINT )<br>OF THE AMERICAN MILLING CO., )<br>UNLIMITED, H&B MARINE, INC., and )<br>AMERICAN MILLING, LP, a limited )<br>partnership, for exoneration from or )<br>limitation of liability, )<br> )<br>      **Petitioners.** ) | Case No.4:98CV575SNLJ |

**MEMORANDUM**

This matter is before the Court on the Claimants'[1] and President Casino's[2] motion to compel American Milling to deposit the (current value of) limitation fund with the Court for distribution to the Claimants [1942], filed December 29, 2010. Responsive pleadings have now all been filed and the matter is ripe for disposition.

This case is well-documented since its inception in 1998 and the Court will not set out the substantial litigation details. However, a brief background history pertaining to the establishment of the Limitation Fund is necessary.

---

[1]The instant motion was filed by Claimant Essex Insurance Co. However, Claimants Brennan Marine Co., Pinnacle Barge Co., LLP, and Pinnacle Transportation, Inc. have joined in and adopted Essex Ins. Co.'s motion and all arguments set forth by Essex Ins. Co. *See*, Document [1949], filed February 3, 2011.

[2]Technically, the instant motion was filed by the Trustee of the Distribution Trust, formerly President Casino. However, for purposes of clarity and continuity of parties in this long-established lawsuit, the Court will simply refer to the "Trustee of the Distribution Trust" as President Casino. Furthermore, the Court will refer to both the Claimants and President Casino collectively as the "Movants".

On January 9, 2001 this Court ordered American Milling to establish the Limitation Fund in this case in the amount of $2,200,000.00. Document No. 1364. The Court further directed American Milling to establish said fund by either posting a corporate surety bond in the amount of $2,200,000.00 or deposit cash in like amount in the court registry. The Court determined that in order to protect "the best interests" of the corporate and individual claimants, American Milling had to choose one of these two methods by which to deposit the funds into the court registry. Document No. 1364 (Memorandum in Support), pg. 11.

On January 30, 2001 American Milling presented surety bond No. 400KE5039 (the Bond) to this Court representing its financial backing of the Limitation Fund. Movants' Exhibit 1 - Bond for Appraised Value. The Bond is in the amount of $2,200,000.00 with interest at the rate of 6% accruing from April 6, 1998. The Bond clearly binds American Milling and the surety to pay into the court registry "the full and just sum of $2,200,00, with interest at the rate of 6% per annum from April 6, 1998 . . . whenever the same shall be ordered by this Court or by any appellate court if an appeal intervenes, then this bond to be void, otherwise to remain in full force and effect." Movants' Exhibit 1. On January 31, 2001, this Court approved the Bond as the means for American Milling to establish the Limitation Fund. Court Order No. 1374.

Over the next seven (7) years many matters pertaining this lawsuit were addressed and resolved. Of these matters, two (2) pertain to the dispute presently before the Court. Firstly, on October 24, 2006, this Court (after vacating a prior order) rejected American Milling's attempt to replace the surety bond earning 6% interest with a cash deposit subject to a variable rate of interest (dependant upon the Court's Comptroller's investment decision). The Court ordered that the surety bond establishing the Limitation Fund, as of January 31, 2001, would remain in place

2

accruing interest at the (then) statutory rate of 6%. The Court further ordered that the statutory rate of 6% on the Limitation Fund would compound annually. Court Order [1697].

Secondly, on July 30, 2008, at the Court's request, the parties to this action filed a Joint Final Damage Accounting for All Property Damage and Business Interruption Claimants [1896].[3] Pursuant to the Joint Accounting, the stipulated damages as of July 30, 2008 were as follows: Brennan Marine - $418,221.81; Pinnacle Barge - $562,814.85; President Casino - $4,476,714.69 (hull damage); and President Casino/Essex Business Interruption and Extra Expenses - $2,497,115.36. The total stipulated damages as of July 31, 2001 were $7,954,866.71 [1896]. This amount far exceeded the Limitation Fund which had grown to $4,016,287.52 as of July 31, 2008. Based upon the July 31, 2008 value of the Limitation Fund, the parties stipulated that the property damage Claimants' respective proportionate shares of the Limitation Fund were as follows: Brennan Marine - 5.25%; Pinnacle Barge -7.08%; and President Casino/Essex Ins. Co. - 87.67%. On July 31, 2008, this Court entered its order and judgment against American Milling and in favor of the property damage claimants based upon their proportionate shares of the $4,016,287.52 Limitation Fund, as valued on July 31, 2008. Documents 1899 and 1900.

American Milling decided to forgo depositing the fund for payout as set forth in the Court's July 31, 2008 Order, and instead, appealed the Court's October 24, 2006 Order keeping the surety bond at 6% interest in place and compounding annually.

On October 22, 2010 the Eighth Circuit Court of Appeals affirmed this Court's October 24, 2006 ruling. *See*, <u>American Milling Co, et. al. v. Brennan Marine, Inc., et. al.</u>, 623 F.3d. 1221

---

[3]This "request" followed a lengthy hearing on the said property claims and business-related claims of President Casino. On July 24, 2008 this Court entered its Order and Memorandum [1892] which denied certain damages sought by President Casino and Essex Ins. Co. Based upon its findings, as set forth in [1892], the Court requested that the property damage claimants submit a final accounting of their respective property damages.

(8th Cir. 2010). It held that the Court had the discretion, as a court sitting in equity, to determine that the interest on the Limitation Fund should be compounded annually. "Principles of equity, and the salutary goal of compensating the claimants for the use of their capital to repair damage caused by American Milling, thus support the district court's determination that the interest on the limitation fun should be compounded annually." American Milling, 623 F.3d. at 1227. Furthermore, the Eighth Circuit held that the Court was correct in rejecting American Milling's attempts to revoke the surety bond and instead deposit the cash value of the Limitation Fund into the court registry. Id., at 1228-29. It found that allowing American Milling to replace the surety bond with a cash deposit would have favored American Milling but put the claimants at a significant financial disadvantage.

> "Once it became clear that American Milling was liable for eighty percent of the damages, and interest rates fell below the six percent required by Rule F(1), it was no longer advantageous for American Milling to maintain the security. A decision to allow American Milling to deposit the $2.2 million with the court would have favored the company's economic interests, but it would have be detrimental to President Casino and the other claimants. The interest generated through the court's investment of the deposited funds almost certainly would have been less than six percent."

Id., at 1229.

American Milling has refused to deposit funds with the Court allegedly based upon the surety bond; i.e. the principal of $2.2 million, plus 6% compounding interest from April 6, 1998 until date of deposit. It argues that 1) "pre-judgment" interest should accrue at 6% compounded annually from April 6, 1998 to July 30, 2008; and that "post-judgment" interest should begin as of July 31, 2008 because this was when the Court entered its judgment as to the property damages for the claimants; and 2) 28 U.S.C. §1961 applies to the "post-judgment" interest accruing in this case and thus, such "post-judgment" interest should be computed at 2.21%.

4

The Claimants, on the other hand, argue that application of §1961 is irrelevant because the terms of the surety bond govern. They contend that interest remains accruing at 6% compounded annually until such time funds are deposited with the Court. They further argue that even if this Court were to decide that the terms of the surety bond do not govern, this Court, sitting in equity, has the discretion to decide the rate at which post-judgment interest should be awarded regardless of §1961.

After careful review of the parties' briefs, and their cited caselaw, as well as the Court's own research, the Court determines that the terms of the surety bond shall govern, and that American Milling shall deposit with the Court the entire value of the surety bond; i.e. $2.2 million, plus 6% compounding interest from April 6, 1998 until such date the funds are deposited.

Firstly, the Court begins its analysis by heeding the Eighth Circuit Court of Appeals' clear words as to the spirit and intent of posting security under Rule F(1). The Court reviewed in detail admiralty history leading up to the adoption of the precursor of Rule F in 1891. American Milling, 623 F.3d. at 1226-27. It found that prior to 1891 the courts "enjoyed discretion to determine how much interest, if any, should be awarded in an admiralty case, and to establish the date from which it would accrue." Id., at 1226. It further found that the purpose of the original Rule 54 was to take from the courts the discretion upon the question of allowing interest, and when it should commence to run. Id., at 1226. Although "[a] limitation of liability proceeding long has been recognized as `the administration of equity in an admiralty court.'", the Court further recognized that Rule F[4], by containing a 6% per annum provision, eliminated "some of the court's equitable discretion", it did not eliminate all equitable discretion. Id., at 1126. In fact,

---

[4]As noted by the Court, Admiralty Rule 54 (first adopted in 1891) partially morphed into Rule 51 in 1920 (Rule 54's interest provision). Thereafter, in 1966, Rule F replaced Admiralty Rules 51-54.

5

"the court retained considerable latitude to fashion an appropriate equitable remedy in each case" and "[t]he absence of a rule on a specific issue such as compounding interest `merely indicates that the question is governed by traditional judge-made principles,' particularly `in admiralty, where the Judiciary has traditionally taken the lead in formulating flexible and fair remedies.'" Id., at 1226 (internal citations omitted).

American Milling insists that Rule 5 stipulating 6% interest per annum is only applicable to **prejudgment interest**, and that post-judgment interest (whenever it made begin to accrue) is governed solely by 28 U.S.C. 1961. The Court might accept this argument if it weren't for the strong judicial history of application of equity principles in admiralty matters, and the existence of the surety bond.

Pursuant to 28 U.S.C. §1961, all money judgments recovered in civil actions in federal courts automatically bear interest from the date of entry. Secondly, §1961 is applicable to money judgments "rendered in admiralty just as it is to judgments in traditional civil litigation." Gele v. B.A. Wilson, 616 F.2d. 146, 149 (5th Cir. 1980) *citing* Kotsopoulos v. Asturia Shipping Co., 467 F.2d. 91, 95 (2nd Cir. 1972); E.I. Dupont de Nemours v. Robin Hood Shifting and Fleeting Service, Inc., 704 F.Supp. 108, 08-09 (E.D.La. 1989); Flowers Transportation, Inc. v. M/V PEANUT HOLLINGER, 94 F.R.D. 99. 101 (E.D.La. 1982), *but see*, Petition of Banker's Trust Co., 569 F.Supp. 386, 389 (E.D.Pa. 1983). Finally, application of §1961 requires that interest be calculated at the rate allowed by state law.

However, none of the cases cited by any of the interested parties involve the existence of a surety bond with specific terms as to rate of interest and the calculation of such interest. What is significant in the instant case is that a surety bond, a contractual agreement, was executed by American Milling for the benefit of the Claimants. Thus, the issue now becomes whether parties

6

can agree to establish an interest rate, even a post-judgment interest rate, independent of §1961.

For example, in Kotsopoulos, *supra.*, a case cited by American Milling, the issue before the Second Circuit was only whether state law or federal law would determine the proper rate of post-judgment interest in an admiralty case; not whether the parties could contract for a rate of interest different from the rate set forth in §1961. However, other courts have addressed whether parties can agree to an interest rate other than the standard one contained in 28 U.S.C. §1961. In Westinghouse Credit Corp. v. D'Urso, 371 F.3d. 96 (2nd Cir. 2004), the Second Circuit, in addressing the issue of post-judgment interest under §1961, held that parties may "contract out" of §1961 as long as their private agreement does not violate state usury or other applicable laws. Westinghouse Credit Corp., at 101. Upon review of the matter, the Westinghouse Credit Corp. Court agreed with other courts that there was nothing in §1961 to prevent parties from setting their own post-judgment interest rates through private agreement. Westinghouse Credit Corp., at 101 *citing* Central States, Southeast & Southwest Areas Pension Fund v. Bomar Nat'l, Inc., 253 F.3d. 1011, 1020 (7th Cir. 2001); Hymel v. UNC, 994 F.2d. 260, 265-66 (5th Cir. 1993); ITT Diversified Credit Corp. v. Lift & Equip. Service, 816 F.2d. 1013, 1018 (5th Cir. 1987); *see also*, Horizon Holdings LLC v. Genmar Holdings, Inc., 244 F.Supp.2d. 1250, 1272-75 (D.Kan. 2003).

> "Similar to our sister circuits, we see nothing in §1961 to prevent parties from setting their own post-judgment interest rates through private agreements, so long as those rates do not violate state usury or other applicable laws. We say this because the text of §1961 is silent on the point, neither expressly permitting nor ruling out deviations by private agreement. While the section employs mandatory language, we believe this is aimed mainly at precluding district courts from exercising discretion over the rate of interest or adopting an interest rate set by arbitrators, not at limiting the ability of private parties to set their own rates through contract."

Westinghouse Credit Corp., at 101(internal citations omitted). Since Westinghouse Credit Corp., *supra.*, other courts have adopted this reasoning and held that parties may deviate from the rate of interest specified in §1961 by their own agreement. *See*, McEachin v. McGinnis, 2008 WL 189669 (W.D.N.Y. January 18, 2008); Planned Furniture Promotions v. Benjamin S. Youngblood, Inc., 2007 WL 1970879 (M.D.Ga. July 3, 2007) *citing* Horizon Holdings LLC v Genmar Holdings, *supra.*; Great-West Life & Annuity Ins. Co. v Dana Credit Corp., 2006 WL 2949520 (N.D.Ill. October 12, 2006). Recently, a sister court addressed the issue of application of a rate for post-judgment interest other than the rate specified in §1961. In Medicine Shoppe International v. Rogers, 2007 WL 2225825 (E.D.Mo. July 30, 2007), the district court held that the statutory rate of §1961 applied and not the rate contained in a promissory note. Id., at *2. However, the Court noted that the plaintiff did not cite any legal authority or make any argument in support of its assertion that the interest rate in the promissory note should apply instead of the statutory rate contained in §1961. Id., at *2. Moreover, the district court recognized that other courts have held that despite the "mandatory" language of §1961, parties may instead contractually agree on a higher interest rate; and the Eighth Circuit Court of Appeals had not yet decided the issue.[5] Thus, the district court was not going to address the issue of contracting out of §1961 because "[e]ven assuming that parties can contractually agree to a higher rate than that mandated by 28 U.S.C, §1961, plaintiff has not alleged that the parties specifically did so in this instance." Id., at *2, n.3.

The purpose of post-judgment interest is it "serves as a means to `compensate the successful plaintiff for being deprived of compensation for the loss from the time between the

---

[5]The Court's current research indicates that this issue has still yet to be addressed by the Eighth Circuit Court of Appeals.

ascertainment of the damage and the payment by the defendant.'" Westinghouse Credit Corp., at 101-02 *quoting* Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S., 827, 835-36 (1990). "Congress' last major amendment to §1961 was designed to keep post-judgment interest rates high enough so as to deter losing defendants from having an economic incentive to pursue frivolous appeals." Westinghouse Credit Corp., at 102 *citing* Kaiser Aluminum & Chem Corp., 494 U.S. at 839. Whether or not appeals initiated by American Milling were frivolous is simply not an issue for this Court to consider; only to note that appeals in this lawsuit have kept the lawsuit active for approximately thirteen (13) years. As the Eighth Circuit noted in American Milling v. Brennan Marine, *supra.*, interest on a limitation fund serves a compensatory purpose. The fact is that the Claimants were forced to use their own capital to make necessary repairs while this lawsuit went through a long judicial process. Principles of equity and the salutary goal of compensating the claimants for the use of their capital to repair damage caused by American Milling not only supports this Court's prior determination that interest on the limitation fund should be compounded annually but also that such interest should be calculated by the terms of the surety bond.

American Milling procured a surety bond with clear terms as to interest rate and duration of the surety bond. American Milling's last attempt to revoke the surety bond fell with disfavor with the Eighth Circuit because such action would have favored American Milling but be detrimental to the Claimants. This Court believes that disregarding the terms and conditions of the bond now would do the same thing that the Eighth Circuit warned against; i.e. favoring American Milling but causing a significant hardship to the Claimants.

A limitation proceeding is "the administration of equity in an admiralty court" and it is reasonable for this Court to once again consider and "give substantial weight to the negative

9

impact of American Milling's motion on the claimants, who had been forced to finance their own repairs and thereby lend to themselves throughout the proceedings." *See*, <u>American Milling v. Brennan Marine</u>, at 1228. This Court finds that the parties agreed to "contract out" of the provisions of §1961 by agreeing to the execution of the subject surety bond. The Court further finds that the terms and conditions of the surety bond govern; i.e. that the interest in this case shall be at a rate of 6%, compounded annually. As for the commencement date of the post-judgment interest, the date is somewhat immaterial since by the terms of the bond, interest will accrue at 6% whether considered as "prejudgment" or "postjudgment". Simply put, interest will compound annually at 6% until payment into the court registry is made regardless of whether July 31, 2008 is considered to be the point when post-judgment interest began accruing.

Therefore, in light of the Court's findings, and in furtherance of the Court's administration of equity to fully compensate the Claimants for their losses, the Court will grant the instant motion compelling American Milling to deposit with the Court the entire value of the surety bond, that being the principal of $2.2 million, plus 6% compounding interest from April 6, 1998 until date said funds are deposited.

Dated this __1st__ day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE